**SEM–TORQ, INC., Plaintiff–Appellant,**

v.

**K MART CORPORATION; and Hy–Ko Products Company, Defendants–Appellees.**

**No. 90–3986.**

United States Court of Appeals, Sixth Circuit.

Argued May 16, 1991.

Decided June 17, 1991.

Rehearing Denied July 23, 1991.

Jeanne E. Longmuir, Charles B. Lyon (argued), Calfee, Halter & Griswold, Cleveland, Ohio, for plaintiff-appellant.

Margaret M. Meko, Edward Kancler (argued), Benesch, Friedlander, Coplan & Aronoff, Richard J. Minnich, Fay, Sharpe, Beall, Fagan, Minnich & McKee, Cleveland, Ohio, for defendants-appellees.

Before JONES and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

Sem–Torq, Inc. appeals the district court's grant of summary judgment in favor of K mart Corporation and Hy–Ko Products Company in this suit alleging copyright infringement, in violation of 17 U.S.C. § 101 *et seq.*, and state law claims of unfair competition, unjust enrichment, and breach of contract. The following issues are before us:

> Whether the district court erred in determining that Sem–Torq's double-sided signs do not constitute "copyrightable subject matter"; and

> Whether the district court erred in dismissing Sem–Torq's unfair competition and unjust enrichment claims?

Because the district court correctly concluded that the set of five double-sided signs is not a copyrightable compilation and because no federal claim remained on which to base pendent jurisdiction, we affirm the district court's grant of summary judgment.

I.

Sem–Torq manufactures and sells signs. Hy–Ko also manufactures and sells signs. Both sell their signs to defendant K mart.

In 1982, Sem–Torq developed five plastic double-sided signs with a yellow background and black lettering which it markets as a "set." They were the first set of multiple signs bearing different legends on each side of the sign, such as "For Rent"/"For Sale." Development of the signs required selecting the number of signs for the set, the materials and colors to be used, the legends, and the pairings of the legends on the front and back of each sign. Joe Seme, Jr., who developed the signs for Sem–Torq, testified that in choosing the pairings he considered seasonal, demographic, and geographic factors. The sign set is displayed in a tiered rack, made by Hy–Ko, with each sign in an individual pocket containing a header card identifying the legends on each side of that sign. The signs are displayed as a set but sold individually.

Hy–Ko began selling signs to K mart in the 1950s but only developed its double-sided signs after learning from K mart of the successful test sales conducted by Sem–Torq in K mart stores. Hy–Ko used preexisting artwork, lettering and display racks. They developed six double-sided signs to accommodate space on the existing display racks. They took nine of the twelve legends used for the double-sided signs from signs already sold by Hy–Ko to K mart. Hy–Ko paired the legends by the particular uses to be made for each sign. For example, Hy–Ko believed that "For Sale by Owner/House for Sale" was a logical choice. Sem–Torq contends that K mart dictated the artwork, legends, and pairing to be used on the Hy–Ko signs based on the copyrighted Sem–Torq signs.

The double-sided signs developed by Hy–Ko differ somewhat from those developed by Sem–Torq. Hy–Ko sells six signs, as opposed to Sem–Torq's five. Hy–Ko also used different pairings and wordings on some of the signs. The size and the lettering of the signs also differ because Hy–Ko

used the dimensions and artwork of a sign previously sold to K mart. Hy–Ko's signs, unlike Sem–Torq's, have a black border.

In November 1988, Sem–Torq filed an application with the United States Copyright Office to register the set of double-sided signs. The application listed the work as "Double sided signs (set of 5/10 legends)," the nature of authorship as "selection and arrangement of legends on both sides of signs," and the date of first publication as December 9, 1982. The Copyright Office registered the signs effective November 22, 1988:

> The only claim we can register is the original 1982 publication consisting of five signs and we will register that claim as a compilation. Please note that because of the borderline nature of the authorship forming the basis of the claim, we make the registration with some reservation and under our practice of resolving doubtful claims in favor of registration.

Sem–Torq later attempted to register two sets of similar signs which it claimed were derivative of the Sign Set Copyright. The Copyright Office refused to register one set and cancelled registration of the other.

On July 10, 1989, Sem–Torq filed suit against K mart and Hy–Ko in a five-count complaint. Counts I and II alleged that K mart and Hy–Ko, respectively, infringed Sem–Torq's registered copyright in a set of five double-sided signs. Count III asserted unfair competition and unjust enrichment claims against K mart. Count IV stated an unfair competition claim against Hy–Ko. Count V charged K mart with breach of contract.

The defendants denied the allegations contained in the complaint and counterclaimed seeking a declaratory judgment that the copyright in the set of double-sided signs is invalid and had not been infringed by either defendant. Sem–Torq denied the allegations in the counterclaim.

The district court dismissed Count IV as preempted by federal copyright law, and entered judgment on Count V in favor of Sem–Torq. The court entered summary judgment in favor of the defendants on Counts I through III. The court found that Sem–Torq lacked a valid copyright in the set of double-sided signs and that without a valid copyright an action for infringement could not be brought. The court also dismissed Count III, asserting unfair competition and unjust enrichment against K mart as the first two allegations in the count were preempted by federal copyright law, the third allegation was addressed in Count V, and the last two allegations were state law claims over which the court declined to exercise jurisdiction. The last two allegations were dismissed without prejudice.

## II.

Appellate courts review *de novo* a grant of summary judgment. *EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir. 1990). Summary judgment is appropriate under Fed.R.Civ.P. 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In determining whether a genuine issue of fact exists, the court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

Copyrightability is often resolved on summary judgment. *See Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985); *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.,* 696 F.2d 918 (11th Cir.), *cert. denied,* 464 U.S. 818, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983), because "[v]ery often no issues of material fact are in dispute and the only task for the court is to analyze the allegedly copyrightable item in light of applicable copyright law." *Magic Mktg. v. Mailing Servs. of Pittsburgh, Inc.,* 634 F.Supp. 769, 771 (W.D.Pa.1986).

### A.

A certification of registration "made before or within five years after

first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certification." 17 U.S.C. § 410(c). The evidentiary weight accorded a certificate registered more than five years after the first publication "shall be within the discretion of the court." *Id.* Sem–Torq registered the signs on November 22, 1988, but first published them on December 9, 1982. Thus, the district court was not bound to accept the validity of the copyright.

### B.

Sem–Torq's signs were registered as compilations under 17 U.S.C. § 103(a). A compilation "is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Copyright protection of a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).

■ To copyright a compilation, the statute imposes three requirements: "(1) collection and assembly of pre-existing material, facts or data; (2) the selection, coordination or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination or arrangement, of an 'original' work of authorship." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* —— U.S. ——, 111 S.Ct. 1282, 1293, 113 L.Ed.2d 358 (1991). Originality, then, is the touchstone of copyrightability. *Id.* 111 S.Ct. at 1285.

> Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice.... Originality does not signify novelty; a work may be original even

though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Id.* at 1287. Thus, the court in *Eckes v. Card Prices Update,* 736 F.2d 859, 863 (2d Cir.1984), held a baseball card compilation copyrightable because the "appellants exercised selection, creativity and judgment in choosing among the 18,000 or so different baseball cards in order to determine which were the 5,000 premium cards." Although the facts contained in the cards could not be copyrighted, the "selectivity in including otherwise non-protected information can be protected expression." *Id.*

■ Although the originality standard is "low," "the selection and arrangement ... cannot be so mechanical or routine as to require no creativity whatsoever." *Feist Publications,* 111 S.Ct. at 1296. For example, Daily Bond Cards which reported all municipal redemptions by listing the name of the issuer, a description of the bond, the date of redemption, the redemption agent, and the identification of the specific bonds recalled were not copyrightable because there was no independent creation involved in copying the five facts from newspaper notices of calls. *Financial Information, Inc. v. Moody's Investors Serv. Inc.,* 808 F.2d 204, 206–07 (2d Cir.1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). Moreover, although courts have also held telephone directories to be copyrightable, *see Hutchinson Tel. Co. v. Fronteer Directory Co.,* 770 F.2d 128 (8th Cir. 1985), the Supreme Court in *Feist Publications* found a telephone directory to be unprotected by copyright law because the process of taking the data provided by the subscribers and listing it alphabetically by surname was "devoid of even the slightest trace of creativity." *Feist Publications,* 111 S.Ct. at 1296.

■ Sem–Torq concedes that its individual signs lack sufficient originality. Both Sem–Torq and Hy–Ko already make signs containing the colors, phrases, and lettering of the individual signs. Moreover, the copyright law does not protect "fragmentary words and phrases" and "forms of expression dictated solely by functional

considerations." *Magic Mktg.*, 634 F.Supp. at 771 (quoting 1 Nimmer on Copyright § 2.01[B] at 2–13–14); *see also* 37 C.F.R. § 202.1(a) (1985). Sem–Torq did choose among a variety of legends, colors, phrases, and pairings to create the signs but the functional nature of the signs, not creativity, mandated the selection of the features which were already widely used.

Sem–Torq's signs, then, may only be protected if the *set* is original. "A copyrightable compilation can consist mainly or entirely of uncopyrightable elements," *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 204 (9th Cir.1989), because "it is the unique combination of these common elements which form the copyrighted material," *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 939 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990); *see also Sargent v. American Greetings Corp.*, 588 F.Supp. 912, 919 (N.D.Ohio 1984). The district court, however, found that the set did not qualify as a compilation under the copyright laws:

> The plaintiff's set of five double-sided signs does not fit within the purview of established law regarding compilation copyrights.... [T]he plaintiff has not arranged and selected preexisting materials in such a way as to form a resulting work as is required to be a compilation. The plaintiff's set of five double-sided signs is not an independent work; it is incapable of existing separately from its components. Rather, the plaintiff has created five individual works for which the copyright laws provide no protection.
>
> Though such signs may be displayed together in a retail store, the signs are neither packaged as a compilation nor are they sold as a compilation. Each sign is sold individually to retailers and then to consumers. The five double-sided signs have been denominated as a set. However, the individual signs bear no relation to each other. The plaintiff's set is nothing more than five individual signs similar in design and structure. Such is not registerable as a copyright compilation.

A copyrightable compilation is created by combining preexisting materials "in such a way that the resulting work *as a whole* constitutes an original work of authorship." 17 U.S.C. § 101. Because the whole compilation is protected, while its individual components may not be, "[t]he whole of a compilation is thus greater than the sum of its parts." *Financial Information, Inc.*, 751 F.2d 501, 505 (2d Cir.1984), *aff'd*, 808 F.2d 204 (1986), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). The set here, however, is no greater than the sum of its individual unprotected parts. The five double-sided signs comprising the set are not sold as a set, nor was there any evidence of consumers buying them as a set. In contrast, copyrightable compilations usually involve a work whose value to consumers is in the combination of its individual parts: a baseball card price guide, *Eckes*, 736 F.2d 859; a daily organizer containing blank forms for recording calendar information and often used dates, addresses, and telephone numbers, *Harper House*, 889 F.2d 197; and a gardening directory, *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir.1977). The signs are displayed together as a set, but there is no value to the consuming public in this arrangement. Moreover, due to stock problems and consumer interference, one or more signs may be missing from the set display at any time. The individual signs would still be equally marketable even if they were not displayed as a set because there is no evidence that consumers care about the display of the set as a whole. The resulting work, then, is the individual unprotected signs, not the set.

### C.

Sem–Torq alleges that its unfair competition and unjust enrichment claims were incorrectly dismissed by the district court on the grounds that a federal cause of action no longer existed. However, when federal claims are dismissed before trial, the court should dismiss the state claims without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *see also Carnegie–Mellon Univ. v. Cohill*, 484

U.S. 343, 350, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988). Because we conclude that the district court properly dismissed the federal claim, we hold that the court properly refused to exercise its discretionary jurisdiction over the state claims.

### III.

The district court correctly granted summary judgment on the ground that Sem–Torq's sign set did not constitute a copyrightable compilation. Because no federal cause remained, the district court also correctly dismissed the pendent state law claims. Therefore, we AFFIRM.