Barney QUILTER, et al., Plaintiffs,

v.

George V. VOINOVICH,
et al., Defendants.

No. 5:91CV–2219.

United States District Court,
N.D. Ohio, E.D.

May 5, 1992.

Timothy F. Scanlon, Scanlon & Gearinger, Akron, Ohio, Armistead W. Gilliam, Jr., Ann Wightman, Faruki, Gilliam & Ireland, Dayton, Ohio, for plaintiffs.

Timothy F. Scanlon, Scanlon & Gearinger, Akron, Ohio, Thomas I. Atkins, Sr., Brooklyn, N.Y., Armistead W. Gilliam, Jr., Ann Wightman, Laura A. Sanom, Faruki, Gilliam & Ireland, Dayton, Ohio, for plaintiff William L. Mallory.

Orla Ellis Collier, III, Norton Victor Goodman, James F. DeLeone, Mark D. Tucker, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, Charles M. Rosenberg, Maynard A. Buck, III, Jeremy Gilman, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for defendants.

Armistead W. Gilliam, Jr., Ann Wightman, Faruki, Gilliam & Ireland, Dayton, Ohio, for intervenors-plaintiffs.

Before JONES, Circuit Judge, PECK, Senior Circuit Judge, and DOWD, District Judge.

## OPINION AND ORDER

JOHN W. PECK, Senior Circuit Judge.

This complex case, or rather series of cases, had its origin in *Armour v. Ohio* which was filed in the District Court for the Northern District of Ohio in 1988. The district judge to whom the case was assigned referred it to a magistrate who recommended denial of relief for the plaintiffs. The district court adopted the magistrate's recommendation. On appeal to the Sixth Circuit Court of Appeals, the decision of the district court was reversed by the court sitting en banc, 925 F.2d 987 (6th Cir.1991), which remanded with directions to certify the case to the Chief Circuit Judge for the appointment of a three-judge court under the provisions of 28 U.S.C. § 2284. Challenged in that case was the plan devised and promulgated by the Ohio Apportionment Board which is charged under the Ohio constitution with the drawing of the districts from which the members of the Ohio General Assembly which consists of the House of Representatives and the Senate, are elected. The specific plan under attack was adopted by the board in 1981. The three-judge court appointed pursuant to the certification held that a voting district boundary line in Mahoning County which split a large cohesive black population between two districts violated the Voting Rights Act and the fifteenth amendment, 775 F.Supp. 1044 (N.D.Ohio 1991). No appeal to the Supreme Court was perfected from that decision.

The present action placed the validity of the apportionment plan promulgated in 1991 as it applied to the entire state at issue. This court held the plan to be invalid in a two to one decision. *Quilter v. Voinovich*, No. 5:91–CV–2219, 794 F.Supp. 695 (N.D.Ohio Jan. 31, 1992). Thereafter, the Apportionment Board prepared another plan which this court decided, by a divided court, to be unconstitutional. No. 5:91–CV–2219, 794 F.Supp. 756 (N.D.Ohio Mar. 10, 1992). That plan was neither published nor promulgated as required by the Ohio constitution and one of the issues in the present case is whether that plan was in fact a new plan or simply a revision containing "technical corrections" of the 1991 Plan, as contended by the defendants. We hold that the "technical corrections" were so extensive and pervasive that the result-

ing document constituted a new plan, hereinafter referred to as the 1992 Plan.

Meanwhile, two original actions involving additional aspects of the entire situation were filed in the Supreme Court of Ohio, which were removed to the district court for the Southern District of Ohio. Neither of those actions is directly involved herein at this juncture. This court appointed a Special Master charged with the responsibility of preparing a plan of redistricting, authorizing him to employ such technical assistance as was deemed necessary for the drafting of the plan, and providing that the cost of this process be assessed against the state of Ohio. On application of the defendants, the Supreme Court of the United States issued on April 20, 1992, an order staying orders of this court entered March 10 and 31. Thereafter, the Special Master filed a Status Report and Request for Instructions pointing out that the plan he had been directed to prepare was 75% to 80% complete, that completion could be accomplished within a matter of days, but that if discontinued at that time would be more difficult and time consuming, and therefore more expensive, to complete at a subsequent time. In response, we ordered the Special Master to proceed to complete the plan, then to file it with this court under seal in order to be available in the event the Supreme Court feels that it may be of assistance. It is parenthetically observed that the members of this court are not aware of the details nor of the thrust of the proposed report, and when and if such a plan is filed under seal its integrity will be maintained pending further instructions from the Supreme Court.

Meanwhile, the passage of time placed the date of the primary election in jeopardy and has placed the political process in a hazardous position. Originally scheduled for May 5, 1992, it was rescheduled by order of this court for September 8, 1992, but is presently scheduled to be conducted June 2, 1992. The Secretary of State of Ohio, who is the chief elections officer of the state, formally advised the Boards of Elections of the eighty-eight counties in the state to do all acts necessary for the conducting of the election on the latter date.

Additionally, the plaintiffs in *Armour v. Ohio* filed a motion asking, *inter alia,* for the issuance of an order to show cause why the state of Ohio should not be held in contempt of court because use of the 1992 Plan was in conflict with the April 23rd order of the *Armour* court requiring the election to take place under the 1991 Plan. We decline, however, to take cognizance of the entire motion, including the request for a show cause order, because the motion was filed in *Armour v. Ohio.* Because we hold that the election may proceed under the 1992 Plan, the *Armour* plaintiffs' other requested relief can be resolved by the *Armour* court at a later date.

The need for a resolution of the issues in this case has become critical because of the time requirements and cut-off dates for the filing of nominating petitions, other periods established by state statutes and regulations, and allowance for time for the printing of ballots and incidental literature. A full literal compliance with the administrative time requirements would necessitate a rescheduling of the announced date for the primary. The election officials are therefore empowered and directed to make such truncations of time periods or other appropriate adjustments to the end that the goal of conducting the primary election on June 2, 1992 can be accomplished.

Pursuant to a motion filed by the plaintiffs herein, a status conference was conducted yesterday in open court which was attended by counsel for all of the parties, and at which many of the parties were personally present. In the course of that conference, which lasted for three hours, attorneys for all of the parties, including those for and against the motion filed by the plaintiffs in *Armour v. Ohio* made extensive, detailed arguments. Upon one point all of counsel, and indeed, the parties themselves, were in agreement; all agreed that only an immediate decision by this court, deciding first under which plan the election is to be conducted, and truncating to the greatest reasonable extent the time periods indicated above, could the June 2, 1992 date become a reality. Following recognition of such agreement, at the conclu-

sion of the hearing the presiding judge announced that the case would be considered as submitted and that an opinion deciding the salient issues would be forthcoming within twenty-four hours. It is against that deadline that this opinion is in preparation.

Turning to the major issue facing us for decision, we face the task of, in effect, selecting the least flawed of the proposed redistricting plans, since none is without legal imperfections. One possible alternative, it should be noted, that of simply ordering that no primary election be held for legislative offices until a legally flawless plan is presented, thus automatically permitting incumbents to hold office until that eventuality occurred, we reject out of hand as inappropriate. A reincarnation of the 1981 Plan is not, of course, an option, it having been replaced by the properly published and promulgated 1991 Plan. The 1991 Plan, however, contained several serious errors and omissions as detailed in a thirteen page submission from the defendants. For instance, in Cleveland, War 4 Precinct CC was completely omitted from the 1991 Plan. Similarly, Coventry Township, Precinct J, in Summit County was omitted. Numerous wards, precincts, and townships were erroneously divided. These deficiencies were corrected in the 1992 Plan. It is now our conclusion that deficiencies of the 1992 Plan are less egregious than those of the 1991 Plan.

In reaching this conclusion, we are in no way depreciating the importance of providing full enlightenment to the electorate by the publication and promulgation process. On the contrary, we regard public education concerning issues and candidates to be a paramount element of the democratic process. In the present instance, however, we conclude that that educational process has been more completely accomplished by the news media than it could have been accomplished through strict compliance with the legal requirements, which could have been met through bare-bones, back-page material which seldom, if ever, is studied by a substantial number of voters. In the present situation, we take judicial notice of the widespread publicity that has been given to this case. The media throughout the state of Ohio has accorded space and time to a discussion of the entire matter, and, indeed, this morning's newspapers, television and radio stories have afforded full coverage, including mention of yesterday's notation that this court would announce a decision today. We therefore hold that substantial compliance with the publication and promulgation requirements have been met.

The fact remains, however, that the Apportionment Board promulgated the 1992 Plan on February 18, 1992, the Secretary of State issued instructions to the county election boards on February 19, 1992, and the filing deadline was February 20, 1992. As previously noted, considerable media interest was focused on this matter. Despite the degree of public attention, we are forced to conclude that the amount of time allowed to decide whether to run in the new districts was inadequate. Accordingly, we direct the Secretary of State to accept new candidate filings in any Ohio House or Senate district reconfigured by the February 18, 1992 amendments. The filing deadline is Friday, May 8, 1992, at 4:00 p.m. The Secretary of State is empowered to take all actions, notwithstanding any state election law or time period to the contrary, to assure that any candidates filing under this court-ordered grace period are included in the June 2, 1992 primary election.

IT IS SO ORDERED.

DOWD, District Judge, dissenting:

I respectfully dissent from that part of the Order which creates a limited period for candidates to file nominating petitions for the Ohio General Assembly.

First, I read the order of the Supreme Court of the United States staying this Court's Orders of March 10, 1992 and March 31, 1992, coupled with the fact that the Supreme Court will review those orders, to divest this district court of jurisdiction with respect to the 1992 Ohio election for the General Assembly. The Court held in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74

L.Ed.2d 225 (1982), as a general rule, that a district court is divested of jurisdiction once a notice of appeal has been filed. *See also Morris v. Morgan Stanley & Co.,* 942 F.2d 648 (9th Cir.1991); *Masalosalov v. Stonewall Insurance Co,* 718 F.2d 955 (9th Cir. 1983) and *Thomas v. Board of Education,* 607 F.2d 1043 (2nd Cir.1979).

The only exception to the general rule that a notice of appeal divests the district court of jurisdiction is found in the situation where the district court is left with the duty of maintaining the status quo during the pendency of the appeal. *Kiddler, Peabody & Co. Inc. v. Maxrus Energy Corp,* 925 F.2d 556 (2nd Cir.1991); and *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268 (9th Cir.1976).

This is clearly not a case where the district court was vested with the responsibility of maintaining the status quo with regards to elections of members to the Ohio General Assembly. Before this Court was the narrowly defined issue of whether the 1991 Reapportionment Plan was constitutional under the Voting Rights Act and the fifteenth amendment. This Court does not have, nor ever did possess, the jurisdiction to oversee the election process in the state of Ohio. As such the exception identified in *Kiddler* and other cases is inapplicable. Since the defendant's have filed a notice of appeal with the United States Supreme Court, and the Supreme Court has indicated that it will review this Court's March 10, 1992 and March 31, 1992 794 F.Supp. 760 decisions, this Court is divested of jurisdiction and cannot address plaintiff's motion to stay.

In the event that my first reason is found to be without merit, I believe this Court should decline jurisdiction over ruling on what are clearly state, not federal, issues. Jurisdiction in this Court was invoked by claims brought under the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution.

Today's Order is in response to claims that the 1992 election for the Ohio General Assembly violates provisions of the Ohio Constitution and enactments of the General Assembly. As such, the plaintiffs seek to amend their complaint to include these pendent state claims. Direction as to the disposition of pendent state claims in federal cases was definitively provided in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs,* the Supreme Court held that pendent jurisdiction may be exercised when there is a substantial federal claim and the state claim arises from a "common nucleus of operative facts." *Id.* at 725, 86 S.Ct. at 1138.

The *Gibbs* Court noted that district courts are not required to hear state claims that satisfy the two prong test for pendency. The Court explained:

[I]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them ... Needless decisions of state claims should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. at 1139.

While the decision to exercise pendent jurisdiction lies within the discretion of the district court, the *Gibbs* Court held that the reasons for exercising pendent jurisdiction are not present in a situation where the federal claims are dismissed. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. *See eg. Hardy v. Brimingham Board of Education,* 954 F.2d 1546, 1553 (11th Cir.1992) ("in the absence of an issues of federal law, and with no federal subject matter jurisdiction other than pendent jurisdiction being present, pendent jurisdiction may not be exercised by a federal court."); *Sem–Torq v. K Mart Corp.,* 936 F.2d 851, 855 (6th Cir.1991) ("when federal claims are dismissed before trial, the court should dis-

miss the state claim without prejudice."); and *Baer v. R & F Coal Co.*, 782 F.2d 600 (6th Cir.1986).

In *Baer*, the plaintiff originally brought suit pursuant to the Age Discrimination in Employment Act. The district court ruled that his federal age claim was time barred, and dismissed the action. After the dismissal of his federal claim, the plaintiff attempted to add a state claim of age discrimination under the doctrine of pendent jurisdiction. The district court denied his request and dismissed the action, holding that because there was no longer a federal claim, there was no claim upon which the state claim could attach. Like the plaintiff in *Baer*, the plaintiffs in the present matter are attempting to interpose a state claim where no federal claim is currently pending.

It is my opinion that the decision of the United States Supreme Court staying this Court's March 10 and March 31, 1992 decisions operates as a dismissal of the federal claims under the Voting Rights Act and the fifteenth amendment for purposes of pendent jurisdiction analysis. In *Evans Transportation Company v. Scullin Steel Co.*, 693 F.2d 715, 718 (7th Cir.1982), the court held that "apart from the statute of limitations consequences, a stay is the equivalent of a dismissal without prejudice." *See also State Farm Mut. Auto Ins. Co. v. Scholes*, 601 F.2d 1151, 1155 (10th Cir.1979) (court held that a stay of the present court's proceedings pending the resolution of the state court action would in effect operate as a dismissal without prejudice because a state court judgment would preclude litigation involved in the federal action); and *Centronics Data Computer Corporation v. Merkle–Korff Industries*, 503 F.Supp. 168 (D.New Hamp.1980).

In the present case, the Supreme Court has stayed the two decisions of this Court that addressed the substantial federal claims under the Voting Rights Act and the fifteenth amendment. As such, for purposes of pendent jurisdiction, these issues must be treated as voluntarily dismissed. Since the federal claims upon which the plaintiffs wish to attach their state law claims are theoretically absent from this case, this court cannot exercise pendent jurisdiction and allow plaintiffs' state law claims.

Moreover, in the absence of a class certification, I find no standing on the part of any of the named plaintiffs in this action to seek the orders issued by the majority today. Not one of the plaintiffs is directly affected by the failure of the Ohio Apportionment Board to satisfy the publication requirements of O.R.C. 107.09. In their motion for stay, filed April 29, 1992, the plaintiff's attach the affidavit of James Randal Weston, who attests that he changed his residence in compliance with the "1991 Plan", only to be denied the right to run for General Assembly because he had failed to file pursuant to the revised "1992 Plan." While Mr. Weston's predicament is unfortunate, he is not a named plaintiff to this action, and is not the member of any recognized class approved by this Court. Since the plaintiffs are unable to demonstrate that any of the named plaintiffs have been prejudiced, they lack standing to seek today's Order.

The Order from which I dissent is anchored in the concern that potential candidates for the Ohio General Assembly were not given a fair opportunity to declare for the office, either as a candidate for the House of Representatives or as a candidate for the Senate, because the 1991 Plan as revised was not adopted until February 18, 1992 and the deadline for filing was a scant two days later.

While I sympathize with that justifiable concern that prompts the action of my colleagues, I note that no such candidate has sought relief in the state courts. I fear that the cure for the defect as adopted by my colleagues will severely jeopardize the ability of state and county election officials to conduct the 1992 primary in an orderly manner.[1]

1. The affidavit of John F. Bender, Chief Elections Counsel for the Secretary of State, presented to the Court at the status conference hearing conducted on May 4, 1992 and filed with the Clerk's Office on May 5, 1992 demonstrates the difficulties that this Order will create by reopen-

## APPENDIX A

### AFFIDAVIT OF JOHN F. BENDER

STATE OF OHIO,

COUNTY OF FRANKLIN, SS:

I, John F. Bender, Esquire, having been first duly SWORN and cautioned states that:

1. I am the Chief Elections Counsel for Secretary of State of Ohio Bob Taft. In that capacity I am responsible for supervising Ohio's elections system and having knowledge of matters concerning the operation of that system.

2. If the United States District Court for the Northern District of Ohio issues an order mandating that General Assembly candidates must run from districts established by the Apportionment Plan submitted in October 1991 and not from districts established by the Apportionment Plan as amended on February 18, 1992, a primary election for General Assembly candidates cannot be held on June 2, 1992.

3. There are only 29 days remaining prior to June 2, 1992. There is insufficient time remaining prior to June 2, 1992 to redraw district lines, reprint ballots, determine affected candidates, and reprogram automatic and electronic voting machines for General Assembly candidates to run under the October 1991 districts.

4. Ballots including absentee ballots have been printed and voting machines programmed for all of Ohio's 13,000 plus precincts for districts established by the Apportionment Plan as amended on February 18, 1992. New ballots cannot be printed without General Assembly candidates. Therefore ballot pages will have to be removed in 66 counties utilizing the "punch card" system and names "blocked off" in counties using an automatic or optical scan system. In addition in those counties using automatic voting systems, machines must be reprogrammed or calibrated and levers covered. Some counties estimate this takes up to 35 days. In Franklin County alone this involved approximately 2800 voting machines in 700 + precincts. There machines are currently being placed or are in place in the precincts.

5. Tens of thousands of ballots must be revised. There will not be time to accomplish those actions specified in paragraph 3 above and voters will vote on non-existent races. Also there exists the probability of programming errors which can effect the validity of other races. Finally in many counties, including Cuyahoga County Ohio's largest, General Assembly races are printed on the same ballot page as other races. Those ballot pages cannot be removed.

6. Absentee ballots must be available no later than May 13 for distribution beginning no later than May 20, 1992. Given this time frame, many of these ballots cannot be "blocked out" for General Assembly candidates. In fact, Portage County will begin distributing absentee ballots on May 5, 1992.

7. Since all candidates have filed and been certified under the districts as provided in the February 18 plan, reverting to the October plan may necessitate establishing new filing and certification deadlines. Either allowing all candidates in affected and non affected districts to refile or allowing only candidates in affected districts to refile will raise legal challenges based on equal protection and due process.

8. The chaos and confusion created among voters who will vote on nonexistent races, candidates who are filed and certified, and elections officials who must now attempt to remove General Assembly races from the ballot will undermined public confidence in the elections system and potentially affect the validity of the whole primary.

9. Ensuring a second primary on September 8 or some other date creates the chaos and confusion raised in my prior affidavit of April 3, 1992 attached to the Supplemental Memorandum in Support or

ing the process for candidates to declare for the June 2, 1992 primary. A copy of the affidavit is attached as Appendix A.

Application to Stay Order of the District Court filed with the U.S. Supreme Court on April 6, 1992 which is attached hereto and incorporated as if fully rewritten herein.

/s/ John F. Bender

JOHN F. BENDER

SWORN to before me and subscribed in my presence this 4th day of May, 1992, in Franklin County, Columbus, Ohio.

[Signature]

NOTARY PUBLIC

My Commission Has No Expiration Date

No. A–693

IN THE SUPREME COURT OF THE UNITED STATES

October Term, 1991

GEORGE V. VOINOVICH, *et al., Appellants,*

*v.*

BARNEY QUILTER, *et al., Appellees.*

AFFIDAVIT

State of Ohio

County of Franklin

Now comes John F. Bender, being first duly cautioned and sworn, says that in his capacity as Chief Elections Counsel to the Ohio Secretary of State, he is responsible for compliance with and enforcement of Ohio elections laws.

Affiant says that in its Order of March 31, 1992, the District Court, in the Case of *Quilter v. Voinovich,* No. 5:91CV2219 (N.D.Ohio, March 31, 1992), stated:

Having been advised by the office of the Secretary of the State of Ohio that the date of June 2, 1992, for the primary election for the purpose of selecting candidates for membership in the General Assembly of Ohio to be voted upon at the General Election to be held November 3, 1992 as directed by order entered herein March 10, 1992 cannot be met and must be vacated, said primary election is hereby rescheduled to be held September 8, 1992. It is further ordered that the Secretary of State of Ohio be and he hereby is enjoined to do all such acts as may be necessary for the holding of such primary election September 8, 1992.

On April 2, 1992, Counsel for Appellees in this case, in their Supplemental Memorandum in Opposition to Appellants' Application for a Stay, stated that "[t]he Secretary of State of Ohio, Robert A. Taft, a Defendant–Appellant herein, has advised the trial court that the State of Ohio could not meet the June 2, 1992, primary date for election to the Ohio General Assembly set by the trial court." Appellees' statement is a mischaracterization of the position of the Ohio Secretary of State. Since the Order of March 10, 1992, enjoining the May 5, 1992, primary date, the Secretary of State has consistently maintained that in order to hold a primary election on June 2, 1992, new legislative districts would have to be in place no later than March 27, 1992. A primary election could, therefore, take place on June 2, 1992, under the legislative districts established under the 1991 plan of apportionment, which plan was enjoined by the District Court on March 10, 1992.

Affiant further states that the Ohio General Assembly, in House Bill 700, signed by the Governor, in an effort to avoid the necessity of holding two primary elections in 1992, moved the entire Ohio primary election to June 2, 1992, the date originally set as the date for the primary election by the District Court in this case.

Affiant says that the District Court's Order of March 31, 1992, fixing September 8, 1992, as the date of the primary election for members of the Ohio General Assembly, unless stayed by this Court, will necessitate the holding of two primary elections in Ohio in 1992, at an additional cost of approximately $6,000,000.00.

Affiant states that local boards of elections will be in the middle of preparing for the November 3rd general election on September 8. To prepare for a special primary

while preparing for the August special and November general elections will present many local boards with massive administrative and financial problems. Counties which are responsible for paying for elections have indicated they cannot afford an additional election due to budgetary constraints.

Affiant says that a September 8, 1992, primary election means Ohio will have three statewide and two special elections in 1992, rendering the recruitment of sufficient qualified pollworkers for five elections in one year impossible in some areas.

Affiant further states that under Ohio law, voting machines must be locked for 60 days after an election, to preserve evidence of the official votes cast. If a primary is held on September 8, 1992, the machines cannot be unlocked in time for the November 3, 1992, general election. Likewise, voting machines used for the August special election cannot be used on September 8, 1992. The State of Ohio will, therefore, have an insufficient number of voting machines available to conduct an election on September 8, 1992, which complies with Ohio law.

Affiant says that by the establishment of a September 8, 1992, primary election date, many out-of-state and military Ohio citizens may not be aware of the new primary or of the need to request absentee ballots for that date. Affiant further says that by law, absentee ballots must be available 35 days prior to the November 3, 1992, general election. A September 8, 1992, primary will allow only six days to print absentee ballots, an impractical deadline to meet. Absentee ballots for the September 8, 1992, primary would have to be made available on the same day as the absentee ballots provided for the August 4, 1992 special election, which will create great confusion among the absentee voters.

Further, Affiant says that candidates for election to the Ohio General Assembly have already filed under existing districts. To hold a September primary with new districts may force candidates to move more

than once to meet the Ohio constitutional and statutory residency requirement.

Further Affiant says not.

/s/ John F. Bender

John F. Bender

Sworn to and subscribed in my presence this 3rd day of April, 1992.

[Signature]

Notary Public

My Commission Has No Expiration Date