Carol J. WAITE, Plaintiff–Appellant, Cross–Appellee,

v.

PATCH PRODUCTS, INC., Big Fun A Go–Go, Inc., David Yearick, Timothy Walsh, and Edward J. Muccini, Defendants–Appellees, Cross–Appellants,

Andrew J. Levison, Esq., and Jim Ward, Defendants.

No. 00–1292, 00–1333.

United States Court of Appeals, Sixth Circuit.

June 12, 2001.

Before GUY, NORRIS, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Carol J. Waite, a resident of the state of Michigan and the owner of a registered copyright for a word game called Common Ground, sued the manufacturer, owner, and creators of a commercially distributed word game called Tribond. Waite initiated her action in federal court pursuant to 17 U.S.C. § 501, claiming that Tribond infringed on her copyright for Common Ground. She also raised state-law claims of unfair competition and conversion. The defendants filed a motion for summary judgment, which the district court granted. Waite appeals, arguing that she presented sufficient evidence to survive summary judgment. The defendants cross-appeal, claiming that the district court erred in

denying their request for attorney fees and costs. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

In December of 1987, while playing a board game that Waite found boring, she made an entrepreneurial decision to create a mentally challenging word game. Waite was inspired by a game that she played as a child while traveling by car with her family. Her father would pick two words and ask what they had in common. For example, he once asked "What do McDonald's and your feet have in common?" Waite prides herself for having always been quick to respond. In the McDonald's example, the answer was "arches."

Between December of 1987 and the fall of 1988, Waite developed several hundred word relationships and conceptualized a game that she named "Common Ground." According to the game's prototype, each question consists of a set of three words that are written on a game card. A participant must identify a shared characteristic for each of the two-word combinations that can be made from the three words. The following example illustrates her game. Given a three-word set consisting of the words "duck, mouse, and snake," a participant should guess these three relationships between the words: (1) Micky Mouse and Donald Duck are famous cartoon characters, a snake is not; (2) a duck and a snake both lay eggs, a mouse does not; (3) neither a mouse nor a snake can fly, a duck can. To win the game, a player must be the first to spell "Common Ground" by turning over one of twelve cards after successfully naming a shared characteristic of any of the two-word sets from the three words given on a card.

By mid–1989, Waite's development of the game had progressed to the point where she decided to copyright her work. She hired Andrew J. Levison, an attorney in Pennsylvania who specialized in the business of licensing and product development, in August of that year. They exchanged ideas on marketing strategies and on how to expand the game. Waite applied for a copyright for Common Ground, receiving an official certificate of copyright registration on September 14, 1989.

Waite and Levison agreed that Levison would present Common Ground to Jim Ward, an employee of a game-manufacturing company called TSR, Inc., to assess its marketing potential. Levison advised Waite soon thereafter that Ward was not interested in Common Ground. Nevertheless, he instructed Waite to develop more word relationships to improve the game's marketability. Waite subsequently sent Levison her notebook that contained the word relationships she had developed from her brainstorming. Soon thereafter, Waite and Levison agreed to terminate their business relationship. Waite insisted that Levison return her notebook. Although Levison told Waite that he had sent the notebook to her in January of 1990, Waite did not actually receive it from him until two months later, after she had requested it in writing three times.

Having failed in her attempt to market Common Ground, Waite decided not to pursue the idea any further. Over five years later, however, she received a call from a relative of hers, who told Waite that her game was being advertised on television. This was in December of 1995. Waite went to a toy store and purchased a 1989 copyrighted version of the game Tribond. After spending countless hours analyzing Tribond, Waite became convinced that Tribond had appropriated her original work that she had produced for Common Ground.

The game Tribond consists of cards that lists categories of three-word clue sets. A participant must guess the correct association, or bond, between all three words. For example, one three-word set under the category of "Arts" gives the clue "Walker, Whitney, and Guggenheim." The correct answer, being the bond between them, is "art museums." By answering correctly, players move their game pieces along a board. The first to get to the game board's end point is the winner.

David Yearick, Timothy Walsh, and Edward J. Muccini, former fraternity brothers at Colgate University, created Tribond in 1989. They formed a company called Big Fun A Go–Go, Inc., which applied for and received a certificate of copyright registration for Tribond on April 23, 1990. Patch Products, Inc. contracted with Big Fun A Go–Go to manufacture the first 2,500 Tribond games. Yearick, Walsh, and Muccini also created different versions of their game, such as Travel Tribond and Tribond for Kids. In 1992, Patch Products bought the rights to Tribond from Big Fun A Go–Go. Patch Products has continued to manufacture and market Tribond and its affiliated games ever since. The three creators of Tribond have consistently denied having had any contact with or knowledge of Waite, Levison, Ward, or the game Common Ground.

Waite filed suit in federal court in December of 1998. Named as defendants were Yearick, Walsh, Muccini, Patch Products, Big Fun A Go–Go, Levison, and Ward. Waite claimed that because Tribond is substantially similar to Common Ground, it infringes on her copyright. She sought relief under 17 U.S.C. §§ 503, 504, and 505. Waite also raised state-law claims of unfair competition and conversion. Levison and Ward were dismissed from the proceedings before the district court. The remaining defendants filed a motion for summary judgment, which the district court granted. Specifically, the district court held that Waite did not produce sufficient evidence to allow any "ordinary observer" to find a substantial similarity between the two games, and that Waite's claim did not even implicate the laws of either unfair competition or conversion. The district court also declined to award costs and attorney fees to the defendants at the conclusion of the lawsuit, finding that although Waite's claims lacked merit, they were nevertheless raised by her counsel in good faith.

Before us now are Waite's appeal from the district court's grant of summary judgment for the defendants and the defendants' cross-appeal challenging the district court's refusal to grant their motion for attorney fees and costs. Waite, now proceeding pro se, argues that the district court erred by determining that she did not present sufficient evidence to establish the elements of copyright infringement.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g., Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. Waite has failed to state a claim for copyright infringement

▐ To establish a claim for copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns., Inc. v. Rural Tel. Servs., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). In the absence of direct evidence of duplication, "the copyright holder frequently proves copying by showing that the defendant or the person who composed the defendant's work had access to the copyrighted material and that the defendant's work is *substantially similar* to the protected work." *Robert R. Jones Assocs. v. Nino Homes,* 858 F.2d 274, 276–77 (6th Cir.1988) (emphasis added). The test for substantial similarity is sometimes called the "ordinary observer test." *See Ellis v. Diffie,* 177 F.3d 503, 506 n. 2 (6th Cir.1999). A plaintiff bears the burden of proving the substantial similarity between protected material and the allegedly infringing work. *See Mihalek Corp. v. Michigan,* 814 F.2d 290, 294 (6th Cir.1987).

Waite cites three errors allegedly made by the district court in granting summary judgment for the defendants. First, she argues that the court should have deferred its ruling until she had the opportunity to obtain fingerprint data from the defendants. According to Waite's theory, Levison provided Yearick, Walsh, and Muccini with her notebook that contained the prototype of Common Ground, including the word combinations that she had produced through brainstorming from 1987 to 1989. Waite believes that if she had been able to match fingerprint data from the defendants with fingerprints found on the notebook, she would be able to prove that the defendants had access to her protected work, thereby adducing circumstantial evidence that the defendants copied Common Ground. Second, she disputes the district court's determination that Common Ground and Tribond are not substantially similar under the ordinary observer test. Third, she argues that the story of Tribond's creation shares too many "coincidences" with her own history with Common Ground, raising a genuine issue of material fact sufficient to survive summary judgment. Waite does not contest the district court's disposition of her state-law claims.

▐ We agree with the district court's conclusion that Waite has failed to carry her burden of raising a genuine issue of material fact regarding the claimed substantial similarity between Common Ground and Tribond. Waite is claiming protection of the Common Ground prototype for which she received a certificate of copyright registration in September of 1989. As a general rule of copyright law, "ideas themselves and general concepts are not copyrightable." *Mihalek,* 814 F.2d at 294. Rather, it is the "expressions of ideas" that are afforded protection. *Wickham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir. 1984). Furthermore, "the copyright law does not protect fragmentary words and phrases and forms of expression dictated solely by functional considerations." *Sem–Torq, Inc. v. K Mart Corp.,* 936 F.2d 851, 854–55 (6th Cir.1991) (internal quotation marks and citations omitted). The idea of creating a game that tests the players' ability to divine a relationship between words is thus not subject to protection under the copyright laws. This is why Waite's statistical evidence showing

the similarity in the sequences and uses of certain words in Tribond and Common Ground is not persuasive in proving substantial similarity between the two games themselves.

■ Although Common Ground and Tribond both involve the exercise of identifying common characteristics between words, the goals and strategies of the games are substantially different. From a three-word clue set, for example, Common Ground requires a player to find a commonality between two of the words and a way in which the third word differs, whereas a player in Tribond must find one common bond between all three words. Tribond has its words grouped in conceptual categories, whereas Common Ground does not. Common Ground consists primarily of cards, whereas Tribond includes an elaborate playing board with game pieces in addition to the question cards.

In sum, there are considerable differences between the two games. "A general impression of similarity is not sufficient to make out a case of infringement." *Mihalek*, 814 F.2d at 295 (internal quotation marks and citation omitted). Additionally, Waite has not produced any evidence that the defendants had access to Common Ground. Her argument that she has produced enough facts to go to trial on this issue is based solely on her conspiracy theory that Levison gave the three Tribond creators her notebook in 1989 and her statistical correlation of selected words common to both games. But "access may not be inferred through mere speculation or conjecture." *Ellis*, 177 F.3d at 506 (original alteration and citation omitted) (upholding the district court's finding that the plaintiff failed to establish access where the district court determined that the evidence presented involved "a somewhat speculative inferential chain").

In the case before us, Levison, on the one hand, and the Tribond creators, on the other, each denied having had any contact between them. Waite produced no evidence to the contrary. The three Tribond creators even provided Waite with their fingerprints. Although Waite complains that the fingerprints were not produced until after the district court had granted summary judgment, she has never engaged an expert to actually compare the exemplars with the fingerprints on her notebook. She thus continues to rely solely on her undocumented suspicion that the Tribond creators had access to her work. Furthermore, as noted by the district court, proof of access is irrelevant if there is in fact no basis for an ordinary observer to find substantial similarity between the two games. We therefore find no error in the district court's grant of summary judgment to the defendants.

C. The district court did not abuse its discretion in denying the defendants' request for attorney fees and costs

■ We now turn to the defendants' cross-appeal, which challenges the district court's decision not to award them attorney fees and costs. According to 17 U.S.C. § 505, "the court in its discretion may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." The district court noted the Supreme Court's directive to take into account factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

■ We will not disturb a district court's determination regarding the award of attorney fees and costs unless the court

336

has abused its discretion. *See Perotti v. Seiter*, 935 F.2d 761, 763 (6th Cir.1991). The district court reasoned that Waite's claims were brought in good faith and were warranted under existing law, even though they were found to be meritless in the end. Given the statute's grant of discretion and the factors that are to be balanced, we cannot say that the district court abused its discretion in declining to award attorney fees and costs to the defendants.

## III.  CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.