# United States Court of Appeals
## For the First Circuit

No. 06-2710

ROY BROWN,

Plaintiff, Appellee,

v.

LATIN AMERICAN MUSIC CO., INC. (LAMCO);
ASOCIACIÓN DE COMPOSITORES Y EDITORES DE MÚSICA
LATINO AMERICANA (ACEMLA),

Defendants, Appellants.

--------

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

--------

Before

Torruella, Newman[*] and Lynch,
Circuit Judges.

--------

Jane Becker Whitaker with whom the Law Offices of Jane Becker Whitaker, PSC and Angel N. Caro were on brief, for appellants.
Patricia Rivera MacMurray with whom Bufete Hernandez Mayoral, CSP was on brief for appellee.

--------

August 7, 2007

--------

[*]Hon. Pauline Newman, of the Federal Circuit, sitting by designation.

**NEWMAN**, <u>Circuit Judge</u>.  This appeal is taken from the district court's dismissal with prejudice of the declaratory defendants' counterclaim for copyright infringement.  The counterclaimants are the Latin American Music Company and the Asociación de Compositores y Editores de Música Latino Americana (collectively herein "LAMCO"), who claim that they own valid copyrights for eleven poems that were written by Juan Antonio Corretjer and "musicalized" by Roy Brown, a music composer and performer.

Mr. Brown brought a declaratory judgment action in the United States District Court for the District of Puerto Rico, requesting the declaration that poet Corretjer's work "En la Vida Todo es Ir" is in the public domain because it was first published in 1957 without the requisite copyright notice.  LAMCO's counterclaim named ten additional poems for which LAMCO charged Mr. Brown with infringement, based on his musical adaptations, of a copyright registered by LAMCO in February 2000.  The parties filed statements of undisputed and disputed fact, depositions were taken, and Mr. Brown presented documentary evidence concerning the poems, their first publication, and his musicalizations as recorded on phonorecords.  Mr. Brown moved for summary judgment on the ground that LAMCO did not possess a valid copyright for the poems, that ten of the poems were in the public domain, and that the musical composition as to the eleventh was authorized by the poet.  Mr. Brown also requested summary judgment on the ground that the claim

-2-

of infringement was time barred because the three-year statute of limitations had run if the phonorecords are viewed as derivative works.

The district court denied Mr. Brown's motion for summary judgment, stating that some material facts were unresolved. However, the court dismissed the infringement counterclaim with prejudice, ruling that LAMCO had not established the elements required to proceed in a copyright infringement suit. On LAMCO's appeal, we affirm the judgment of the district court.[1]

## I.  BACKGROUND

The eleven poems are entitled "En la Vida Todo es Ir," "Oubao Moin," "Distancias," "Inriri Cahuvial," "El Hijo," "Andando de Noche Sola," "Día Antes," "Ayuburi," "Diana de Guilarte," "Boricua en la Luna," and "De Ciales Soy."  They were produced by Corretjer from the early 1950s through the 1970s, and ten of the poems appeared in books or pamphlets bearing publication dates from 1952 to 1976, as shown in the district court record; none of these works contained a copyright notice.

Mr. Brown states that from 1975 to 1987 he set these poems to music, performed the songs, and recorded them on phonorecords.  He states that on the labels and in the copyrights he registered for the musical works Juan Antonio Corretjer was listed as the author

---

[1]Brown v. Latin American Music Co., No. 05-1242 (D.P.R. May 8, 2006).

of the poems. He testified concerning his relationship with the poet, and that he made payments to Mr. Corretjer until the poet's death in 1985.

Mr. Brown presented documentary and affidavit evidence concerning the publication of ten of the eleven poems. In summary: six of the poems were included in an anthology entitled Yerba Bruja (these poems are "En la Vida Todo es Ir," "Inriri Cahuvial," "El Hijo," "Andando de Noche Sola," "Ayuburi," and "De Ciales Soy"); Brown filed photocopies of the cover and pertinent pages of the first edition of Yerba Bruja, showing no copyright notice.

The poem "Oubao Moin" was included in a book of poems entitled Alabanza en la Torre de Ciales, published in Costa Rica in 1953 and first published in Puerto Rico in 1965; no copyright notice appeared in either publication. The first United States edition of Alabanza en la Torre de Ciales also lacks a copyright notice. The poem "Distancias" was first published in 1957 in a publication entitled Imagen de Borinquen 3; the cover and pertinent pages contained no copyright notice.

Mr. Brown filed the affidavit of the Director of the Puerto Rico Collection of the library of the University of Puerto Rico, Rio Piedras Campus, whose statement included the library call numbers of the three books Imagen de Borinquen, Yerba Bruja, and Alabanza en la Torre de Ciales, and that these books are part of the Puerto Rico Collection and for public use in the library reading room;

attached were photocopies of the covers and title pages of the books in the library's Collection.

The record also contains photocopies of the relevant pages for the poem "Día Antes," as first published in 1967, without a copyright notice, in a pamphlet entitled Pausa para el Amor. The poem "Diana de Guilarte" was included in a volume entitled Construcción del Sur bearing the publication date of 1972; the first edition has no copyright notice. As to the eleventh poem, Mr. Brown stated that "Boricua en la Luna" was never published by Corretjer.

Mr. Brown also provided information concerning his musical adaptations, and proffered the phonorecords in the district court. He stated that he created the musical composition of "En la Vida Todo is Ir" in 1975 and that its performance was included in the phonorecord entitled Profecia de Urayoan in 1975. The phonorecord entitled Distancias was created in 1976, and included the musical compositions of the poems "Oubao Moin," "Distancias," "Inriri Cahuvial," "El Hijo," "Andando de Noche Sola," and "Día Antes." The musical compositions "Diana de Guilarte" and "Ayaburi" were included in the phonorecord Nuyol released in 1984. The musical composition "Boricua en la Luna" was included in the phonorecord Arboles created in 1987. The copyright registrations for these musical works are in the summary judgment record; they all name Juan Antonio Corretjer as the author of the poems.

LAMCO entered general denials to almost everything in Brown's Statement of Uncontroverted Facts And Authenticated Exhibits in Support of Motion for Summary Judgment, except that LAMCO "admitted" that five of the poems at issue "are contained in the collection of poems titled Yerba Bruja, first published in 1957." LAMCO argued that Mr. Brown had not established that some or all of the publications were in the unlimited circulation that was necessary to place the poems in the public domain. The district court, pointing out that Brown bore the burden of proof on his motion for summary judgment, denied the motion.

On this appeal Mr. Brown asks us to grant summary judgment as a matter of law, on the basis that our appellate consideration is de novo. He argues that LAMCO did not meet the requirements of Fed. R. Civ. P. 56, which establishes that mere allegations or general denials are insufficient to oppose a motion for summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1976); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Mr. Brown points out that LAMCO responded to his complaint by merely

"deny[ing] for lack of information or belief" and other phrases of general denial, whereas the matter of having a valid copyright is fundamental to LAMCO's charges of infringement. See id. at 323 (the non-moving party must come forward with specific facts that raise a genuine issue). Fed. R. Civ. P. 56(e); see also Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (a fact is material if it would affect the outcome of the case). Thus Mr. Brown asks us to grant his motion for summary judgment. However, we need not consider whether we have appellate jurisdiction of this issue or whether this procedure is warranted, for we affirm the district court's dismissal of the infringement counterclaim.

## II. THE INFRINGEMENT COUNTERCLAIM

The dismissal of a claim or counterclaim for failure to establish the elements of the claim receives plenary review, applying the standards applicable to review of questions of law, with factual inferences in favor of the claimant. See Ramirez v. Arlequín, 447 F.3d 19, 20 (1st Cir. 2006)(the district court's dismissal is reviewed de novo, drawing all reasonable inferences in the claimant's favor); Ramos-Piero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006) (dismissal for failure to state a claim requires "accepting the plaintiff's well-pleaded facts as true and indulging all reasonable inferences therefrom"). When a claim is challenged with reference to matters outside the pleadings, including depositions, admissions, and affidavits, Fed. R. Civ. P. 12(b)(6)

-7-

provides that it is considered in accordance with the criteria of summary judgment. See Garside v. Osco Drug, Inc., 895 F.2d 46, 650 (1st Cir. 1990) (the purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial") (quoting Fed. R. Civ. P. 56 advisory committee note).

The infringement counterclaim is based on LAMCO's registration in February 2000 of the copyright for a work entitled Oubao Moin y 17 Obras Mas de Juan A. Corretjer, which included the eleven poems at issue. The registration application states the date of first publication as February 19, 1979. The district court perceived that the threshold question was whether LAMCO held a valid copyright to these poems, and observed that the burden of establishing a valid copyright resides with the claimant, citing Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3, 5 (1st Cir. 1996) ("To prevail on a claim of copyright infringement, a plaintiff must show two elements: (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer."). See also T-Peg, Inc. v. Vermont Timber Works, Inc., 459 F.3d 97, 108 (1st Cir. 2006) (the burden is on the claimant to prove a valid copyright and its infringement); Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005). Here it is not disputed that Mr. Brown used the Corretjer poems, and although it is not an issue, Brown states that the poet welcomed and encouraged this

usage.  See Grubb, 88 F.3d at 3 (the claimant bears the burden of proof as to both elements of a copyright claim).

Mr. Brown argued in the district court that LAMCO did not have a valid copyright because ten of the poems had been published and placed in the public domain, whether viewed under the notice requirements of the 1909 Copyright Act or the 1976 Copyright Act. The district court agreed that the burden was on LAMCO, as the claimant, to establish this threshold element.  The Act of 1909 provided:

> Any person entitled thereto by this title may secure copyright for his work by publication thereof with the notice of copyright required by this title; and such notice will be affixed to each copy thereof published or offered for sale in the United States by authority of the copyright proprietor, except in the case of books seeking ad interim protection under section 22 of this title.

1909 Copyright Act, 17 U.S.C. § 10 (emphasis added.)  As explained in Twin Books Corp. v. Walt Disney Co., 83 F.3d 1162 (9th Cir. 1996):

> The general rule under the 1909 Act is that a work must bear a valid copyright notice upon publication in order to secure copyright protection in the United States. Nimmer on Copyright § 7.02(C)(1).  Under that rule, a publication of a work in the United States without the statutory notice of copyright fell into the public domain, precluding forever any subsequent copyright protection of the published work.

Id. at 1965-66

Under the 1909 Act the principle evolved that a "general publication" without the statutory notice could bar access to federal copyright, but a "limited publication" would not.  See Burke

v. <u>Nat'l Broad. Co., Inc.</u>, 598 F.2d 688, 691 (1st Cir. 1979).  This principle carried forward to the Act of 1976 (effective January 1, 1978), which also required including a copyright notice in the first publication.  <u>See</u> 17 U.S.C. § 401(b).[2]

It was thus necessary for LAMCO to show, at least <u>prima facie</u> in light of Brown's documentary evidence, that the poems at issue were not published before the February 19, 1979 publication recited in the registration certificate obtained by LAMCO in 2000.  All that LAMCO offered the district court was a denial of Brown's assertion, plus the admission that <u>Yerba Bruja</u> with six poems was published in 1957.  The district court referred to the absence of support, in considering the evidentiary weight appropriate to LAMCO's copyright certificate.  The 1976 Act provides:

> In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).  Thus a registration within five years of first publication is accompanied by a presumption of validity of the copyright, whereas a registration obtained after five years benefits from no presumption, and the weight given to such a registration is "within the discretion of the court."  17 U.S.C. § 410(c).  <u>See</u> 3

---

[2]This notice requirement applied to all publications until March 1, 1989, when United States adherence to the Berne Convention established that a copyright notice would no longer be required.

Nimmer on Copyright, § 12.11, at 12-195 (2006) ("The significant difference between these two provisions [of the 1909 and 1976 Acts] is that the prima facie effect of registration was achieved under the 1909 Act whenever registration occurred whereas, under the current Act, it is limited to those registrations that occur before, or within five years after, first publication of the work.")

The district court explained that Congress included this five-year provision in the Act of 1976 "on the ground that the longer the lapse of time between publication and registration, the less likely to be reliable are the facts stated in the certificate." Brown, slip op. at 7-8 (citing 3 Nimmer on Copyright § 12-11 and Cabrera v. Teatro del Sesenta, Inc., 914 F. Supp. 743 (D.P.R. 1995)).

Exercising the discretion assigned by § 410(a), the district court observed that LAMCO's copyright did not benefit from prima facie validity, and concluded that the LAMCO registration would receive little or no weight. The court referred to the passage of twenty years between the date of first publication stated on the registration certificate and the date of registration, citing Sem-Torq, Inc. v. K Mart Corp., 936 F.2d 851, 854 (6th Cir. 1991) (upon a gap of six years after first publication "the district court was not bound to accept the validity of the copyright"). See also Latin Am. Music Co. v. Archdiocese of San Juan of the Roman and Apostolic Church, 194 F. Supp.2d 30, 39 (D.P.R. 2001) (when more than five years have elapsed between first publication and registration, the

-11-

court is not required to accept the prima facie validity of the copyright); Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc., 1997 WL 158364, 42 U.S.P.Q.2d (BNA) 1398 (S.D.N.Y. 1997) (registration of a work more than five years after first publication does not constitute prima facie evidence that the copyright is valid, and thus the claimant has the burden of proving the validity of its copyright).

The district court found "specific reason here to question the facts contained in the certificate, as it states that the first publication of the copyrighted work was February 18, 1979, but Defendants, in their opposition to Plaintiff's statement of uncontested facts, conceded that five of the poems in question - 'Andando de Noche Sola,' 'En la Vida Todo es Ir,' 'Inriri Cahuvial,' 'El Hijo,' and 'Ayubiri' - were first published in 1957." Brown, slip op. at 8. The court mentioned LAMCO's admission that the facts stated in the registration certificate are "not wholly accurate," and also that LAMCO proffered no evidence to counter Brown's submissions concerning the publication of the poems.

In its briefs on this appeal LAMCO does not respond to the district court's concerns as reflected in the opinion. Instead, LAMCO argues that Brown did not challenge the assignment to LAMCO from Corretjer's heirs, a matter not in dispute. LAMCO also argues that the district court erred in considering Brown's evidence of publication when LAMCO had "controverted" it by general denial.

-12-

However, the district court correctly held that the burden of proof of the existence of a valid copyright is with the infringement claimant, and in recognizing that LAMCO presented or proffered no facts or evidence concerning Brown's presentation of books and pamphlets containing the poems without a copyright notice. In opposing a motion for dismissal for failure to state a claim, as in opposing a motion for summary judgment, general denials are insufficient, and the court is not required to credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Olson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). See also, e.g., Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005) (the pleadings must support each material element needed to sustain recovery). LAMCO did not present any substantive support for its claim of copyright, as against the twenty-year gap and the uncontroverted documentary evidence of prior publication without the required statutory notice.

LAMCO's final argument on appeal is simply that the district court erred in ruling on the counterclaim instead of having a trial. Again, there is no suggestion of evidence that might lead to a judgment in LAMCO's favor. We have been directed to no reversible error in the judgment that LAMCO had not established the requisite elements for proceeding with a suit for copyright infringement. In view of this affirmance we do not reach Brown's additional and alternate defenses, inter alia, that Brown's phonorecords commenced

a three-year statute of limitations as to any claim on behalf of the author of the poems.  See 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."); see generally Otero v. P.R. Indus. Comm'n,  441 F.3d 18, 20 (1st Cir. 2006) (the appellate court may affirm the judgment on any basis supported by the record).

### III.  THE REQUEST FOR RECONSIDERATION

LAMCO argues that the district court erred in refusing to grant the petition for reconsideration, stating that it provided additional evidence.  The evidence was a copy of the assignment to LAMCO from Mr. Corretjer's family.  Mr. Brown points out that the assignment does not concern copyright validity; it is a transfer of whatever rights the family had, not a creator of rights.  LAMCO does not explain how this document establishes a valid copyright in the poems.  The district court correctly rejected LAMCO's argument that the assignment was newly discovered evidence, or that it became relevant only upon the court's ruling.  We agree with the court that no basis for reconsideration was shown.  See Jorge Rivera Surillo & Co. v. Falconer Glass Indus., 37 F.3d 25, 29 (1st Cir. 1994) (motions for reconsideration are for the purpose of correcting manifest errors of law or fact, or if there is newly-discovered evidence, or an intervening change in the law).

In its petition, LAMCO also proposed to withdraw its prior admission that <u>Yerba Bruja</u> was "first published in 1957." Brown points out that LAMCO proffered no evidence in contradiction of the publication documents of record, and that no error has been shown in the district court's denial of reconsideration.

## CONCLUSION

The dismissal of the infringement counterclaim is affirmed.

**<u>Affirmed</u>**.