# United States Court of Appeals
## For the First Circuit

No. 05-2806

LATIN AMERICAN MUSIC CO., INC.
and ASOCIACIÓN DE COMPOSITORES
Y EDITORES DE MÚSICA LATINOMERICANA,
Plaintiffs, Appellants,

TURABO RADIO CORP., ET AL.
Plaintiffs,

SOUTHERN MUSIC PUBLISHING CO., INC., ET AL.,
Plaintiffs, Appellees

v.

THE ARCHDIOCESE OF SAN JUAN OF THE
ROMAN CATHOLIC & APOSTOLIC CHURCH, ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before
Lipez, Circuit Judge,
Selya, Senior Circuit Judge,
and DiClerico, Jr.,[*] District Judge.

Jane Becker Whitaker, with whom Law Offices of Jane Becker Whitaker, and Angel N. Caro, were on brief, for appellants.
Richard H. Reimer, with whom Diego A. Ramos, Fiddler González & Rodríguez, PSC, Stephen S. Young, and Holland & Knight, LLP, were on brief for appellee American Society of Composers, Authors and Publishers.
Barry I. Slotnick, with whom Jacques Rimokh, Loeb & Loeb, LLP

[*]Of the District of New Hampshire, sitting by designation.

and <u>Adsuar Muñiz Goyco & Besosa, PSC</u>, were on brief for appellees,
Southern Music Publishing Co., Inc., et al.

_____

August 16, 2007

_____

**DiClerico**, **District Judge**.  Latin American Music Company ("LAMCO") and Asociación de Compositores y Editores de Música Latino Americana ("ACEMLA") brought suit in 1996, alleging that the Archdiocese of San Juan of the Roman Catholic and Apostolic Church, through its two radio stations, along with ten other radio broadcasters, were infringing their copyrights in fifty-one songs.[1] The case then expanded to include other claims and parties and was consolidated with four related cases, which together involved copyrights to more than five hundred songs.  LAMCO and ACEMLA appeal decisions by the district court that denied their infringement claims as to five songs; allocated half of the obligation to pay for a special master's fees to LAMCO and ACEMLA; dismissed their claims, counterclaims, and defenses as a sanction; and held that they were infringing copyrights owned by other parties.

---

[1]The original defendants were the Archdiocese d/b/a WORO-FM and WKVM-AM, Isabela Broadcasting Co. d/b/a WKSA-FM and WISA-AM, Kelly Broadcasting System, Corp. d/b/a WNIK-FM and WNIK-AM, Ramon Rodriguez & Associates, Inc. d/b/a WCFI-FM, Bestov Broadcasting System, Corp. d/b/a WIAC-AM and WIAC-FM, HQ-FM 103, Inc. d/b/a WCHQ-FM, AERCO Broadcasting, Corp. d/b/a  WQBS-AM, Tommy Muñiz Productions, Inc. d/b/a WLUZ-AM, VI-MAN Broadcast System, Corp. d/b/a WEGA-AM, ABG Realty & Investment Corp. d/b/a WRSJ-AM, and Sensacion Broadcasting Corporation d/b/a WSAN-FM.

I.

Luis Raul Bernard founded LAMCO, a music publisher based in New York, and ACEMLA, a performance rights society[2] affiliated with LAMCO and based in Puerto Rico. Bernard is the chief executive officer, director, and majority stockholder of both LAMCO and ACEMLA. Because LAMCO and ACEMLA are closely aligned in this case, we will refer to them as "LAMCO/ACEMLA," unless individual differentiation is necessary.

In response to the infringement suit brought against them by LAMCO/ACEMLA, the Archdiocese and the other radio broadcaster defendants (collectively referred to as "the Broadcasters") brought counterclaims against LAMCO/ACEMLA. They also filed third-party complaints against Broadcast Music, Inc., Peer International Corporation, and the American Society of Composers, Authors, and Publishers ("ASCAP"), seeking indemnification and a defense against the claims brought by LAMCO/ACEMLA.[3] ASCAP and LAMCO/ACEMLA disputed the rights to five of the songs listed in the LAMCO/ACEMLA

---

[2]"Such organizations . . . obtain rights to musical compositions, license them (often through blanket licenses), and collect royalties from sub-licenses." Venega-Hernandez v. Asociacion De Compositores y Editores De Música LatinoAmericana, 424 F.3d 50, 52 (1st Cir. 2005).

[3]A more detailed presentation of the complex procedural history of this case can be found in the district court's orders. See Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 2005 WL 1847013 (D.P.R. Aug. 2, 2005); Latin Am. Music Co. v. Archidocese of San Juan, 194 F. Supp. 2d 30 (D.P.R. 2001); Peer Int'l Corp. v. Latin Am. Music Corp., 161 F. Supp.2d 38 (D.P.R. 2001).

complaint and agreed that resolution of the ownership and copyright issues as to those songs could serve as a roadmap for resolving the same issues as to the other songs disputed by the parties. ASCAP and LAMCO/ACEMLA filed motions for partial summary judgment. The district court granted ASCAP's motion, dismissing LAMCO/ACEMLA's infringement claims on all five songs.

Several music publishers (collectively referred to as "the Publishers") brought claims against LAMCO/ACEMLA, alleging that they owned or controlled copyrights to 468 songs that LAMCO/ACEMLA were infringing.[4] The Publishers moved for summary judgment on their infringement claims. LAMCO/ACEMLA disputed the rights to 294 of the songs claimed by the Publishers and moved for summary judgment as to infringement of those copyrights. As to the remaining 174 songs, LAMCO/ACEMLA acknowledged that they had been included in an ACEMLA catalog in error but denied infringement. In response to the motions, the district court summarized the bases of the parties' claims of ownership and the applicable law but reserved judgment on infringement pending review of the ownership issues by a special master.

On March 31, 2003, noting that "the present copyright cases are complicated and extremely fact intensive," the district

---

[4]The music publishers are Peer International Corporation, Peer International Corporation of Puerto Rico, Southern Music Publishing Company, Inc., Peermusic Ltd., Sonido, Inc. d/b/a FAF publishing, EMI Catalogue Partnership, EMI April Music, Inc., and Broadcast Music, Inc.

court appointed a special master to examine the documentation pertaining to the chains of title as to all of the songs at issue in the consolidated cases. The district court directed the special master to make recommendations as to issues of authorship, ownership, and compliance with statutory requirements, whether the copyrights for the songs at issue had been infringed, and if so, by whom, and a recommendation on LAMCO/ACEMLA's allegations of missing royalty payments. The special master's compensation was set at an hourly rate of $565. The district court ordered the Publishers to pay half of the fees and costs and LAMCO/ACEMLA to pay the other half and ordered each group to file a bond with the court in the amount of $37,500, within ten days following entry of the order.

During the course of the litigation, LAMCO/ACEMLA repeatedly failed to meet court-ordered deadlines and obligations, including posting the bond. On October 13, 2004, the district court issued an ultimatum, granting a final thirty-day extension of time for LAMCO/ACEMLA to post the bond and warning that failure to comply would result in sanctions which could include dismissal of their claims and affirmative defenses. Nearly nine months later, on August 2, 2005, the district court concluded that LAMCO/ACEMLA had failed to comply with its order and dismissed their claims, counterclaims, and affirmative defenses in all of the consolidated cases.

On May 10, 2004, the special master issued his report and recommendation. The district court approved and adopted the special master's report and recommendation, in part, with modifications as to the ownership of rights to certain songs, and ordered a hearing to resolve a question about notice and good faith with respect to ownership of rights in other songs. With respect to the songs for which the special master's report and recommendation was approved, the district court granted the Publishers' motion for summary judgment on copyright infringement against LAMCO/ACEMLA. The order also assessed damages in the amount of $313,500 and allowed the Publishers to file an application for reasonable attorneys' fees and costs.

Following a hearing on ownership issues for the songs that were not resolved by the special master's report and recommendation, the district court determined that the Publishers also owned the copyrights to those songs. The court granted the Publishers' motion for summary judgment as to their infringement claims on those songs and awarded damages in the amount of $29,250. The court also granted the Publishers' motion for a permanent injunction against future infringement by LAMCO/ACEMLA and resolved other issues that were then pending. Based on those determinations, the district court entered judgment as to the claims and counterclaims in the consolidated cases. LAMCO/ACEMLA appealed.

II.

On appeal, LAMCO/ACEMLA challenge the district court's decisions holding that LAMCO/ACEMLA did not own copyrights in five songs claimed by ASCAP-member publishers, apportioning fifty percent of the special master's fees to LAMCO/ACEMLA, sanctioning them for failing to post a bond as ordered, concluding that they lacked standing to seek rescission of copyright assignments, and holding that authorizing use of songs constitutes copyright infringement. ASCAP and the Publishers oppose LAMCO/ACEMLA's arguments on appeal.

A.  Summary Judgment on Five Songs

ASCAP sought partial summary judgment on LAMCO/ACEMLA's infringement claims against the Broadcasters as to five songs, asking that those five claims be dismissed.[5] LAMCO/ACEMLA sought partial summary judgment that they held the performing rights licenses to the same five songs. The disputed five songs are: "Caballo Viejo" by Simón Díaz, "Patacón Pisa'o" by Ramon A. Chaverra, "Ojos Chinos" by Rogelio "Kito" Vélez, and "Te Sigo Quieriendo" and "Una Tercera Persona" by Luz C. Tirado.

---

[5]ASCAP is a performing rights society that licenses "the public performance of nondramatic musical works on behalf of copyright owners of such works." 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.19 at 8-268.47 (2005) (quoting 17 U.S.C. § 101). ASCAP can grant only non-exclusive licenses on behalf of its members and does not own the copyrights to the works of its members. Id. at 8-269.

The district court concluded that as to four of the songs, "Caballo Viejo," "Patacón Pisa'o," "Te Sigo Quieriendo," and "Una Tercera Persona," ASCAP members held the copyrights, which precluded LAMCO/ACEMLA's infringement claims arising from those songs. With respect to the fifth song, "Ojos Chinos," the district court determined that LAMCO/ACEMLA had a non-exclusive license, which might entitle them to receive payments from the Broadcasters but did not support standing to maintain a copyright infringement claim. The court also held that although LAMCO/ACEMLA recorded their agreement with the composer's heirs to a non-exclusive license for all performing rights to "Ojos Chinos," the recording did not comply with the requirements of 17 U.S.C. § 205(c) and, therefore, did not provide constructive notice of the license. Based on those conclusions, the court dismissed LAMCO/ACEMLA's infringement claims based on the five disputed songs. LAMCO/ACEMLA appeal that decision.

We review a district court's summary judgment decision de novo, using the same standard that governed below. Ruiz-Rosa v. Rullan, 485 F.3d 150, 155 (1st Cir. 2007). Summary judgment is appropriate when the facts properly supported by the record and taken in the light most favorable to the non-moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Cross motions for summary judgment do not change

-9-

the standard.  <u>Specialty Nat'l Ins. Co.</u> v. <u>OneBeacon Ins. Co.</u>, 486 F.3d 727, 732 (1st Cir. 2007).  To prevail on a copyright infringement claim, "two elements must be proven:  (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  <u>T-Peg, Inc.</u> v. <u>Vt. Timber Works, Inc.</u>, 459 F.3d 97, 108 (1st Cir. 2006) (internal quotation marks omitted); <u>accord</u> <u>Brown</u> v. <u>Latin Am. Music Co.</u>, ___ F. ___, 2007 WL 2253543, *3 (1st Cir. Aug. 7, 2007).

### 1. "<u>Caballo Viejo</u>"

It is undisputed that the composer, Simón Díaz, granted the rights to "Caballo Viejo" to Selemúsica, C.A. through an agreement dated September 29, 1981.  Selemúsica entered agreements with West Side Music Publishing, Inc. that granted West Side the right to represent Selemúsica in the United States and its territories.  West Side registered the copyright for "Caballo Viejo" in 1983, showing Selemúsica as the copyright owner.

LAMCO/ACEMLA based their claim to "Caballo Viejo" on their agreements with West Side.  In an agreement dated May 15, 1981, West Side granted LAMCO/ACEMLA the photomechanical rights and the exclusive rights to publish and license performance of "Caballo Viejo" for a five-year term.  West Side and LAMCO/ACEMLA also entered an exclusive performing rights agreement on January 3, 1982.  LAMCO/ACEMLA recorded the 1981 agreement on December 17, 1986.

ASCAP asserted its claim to "Caballo Viejo" also based on the rights held by West Side. West Side entered an agreement with Barnegat Music Corporation in 1989, which included the rights to collect performing fees and royalties for "Caballo Viejo." West Side and Barnegat merged in 1993. Barnegat had been a member of ASCAP since 1984. On December 2, 1986, before LAMCO/ACEMLA recorded their 1981 agreement with West Side, the Copyright Royalty Tribunal determined that "[t]he Settling Parties [which include ASCAP] showed that Selemusica, C.A. conveyed its rights to Barnegat Music Corp., an ASCAP member."[6] Final Determination of the Distribution of the 1984 Jukebox Royalty Fund, CRT No. 85-1-84JD, 1986 WL 116931, 51 Fed. Reg. 43,455, 43,459 (CRT Dec. 2, 1986).

The district court agreed with the Tribunal that Barnegat held the rights to "Caballo Viejo" but came to that conclusion based on a somewhat different chain of title. The court concluded that Hector Varona, the president of West Side, verbally terminated the 1982 agreement with LAMCO/ACEMLA, thereafter did not accept royalty payments sent to him, and refused to extend the 1981 agreement with LAMCO/ACEMLA. Based on those circumstances, the district court held, based on the summary judgment record, that the rights to "Caballo Viejo" were transferred from the composer to

---

[6]ASCAP relies on the Tribunal's finding, while LAMCO/ACEMLA denigrate it. Neither side cites authority as to what weight the Copyright Royalty Tribunal's finding should be given. We will not explore the preclusive effect of that determination in the absence of appropriately supported briefing by the parties.

-11-

Selemúsica, to West Side, and then to Barnegat, an ASCAP member. The court ruled that ASCAP was entitled to collect performance royalties for the song.

On appeal, LAMCO/ACEMLA argue that the district court erroneously concluded that West Side rescinded the 1982 agreement with LAMCO/ACEMLA and assert that under the 1982 agreement, LAMCO/ACEMLA continue to own the rights to "Caballo Viejo." LAMCO/ACEMLA also argue that Varona, on behalf of West Side, could not terminate the 1982 agreement verbally because all transfers of copyright must be in writing. See 17 U.S.C. § 204(a). ASCAP contends that West Side's entire agreement with LAMCO/ACEMLA expired at the end of the 1981 agreement's five-year term and was not renewed.

The summary judgment record is far from clear as to how, when, or if the 1982 agreement was terminated. The record shows that the 1981 agreement between LAMCO/ACEMLA and West Side expired at the end of its five-year term in 1986.[7] The 1982 agreement between LAMCO/ACEMLA and West Side, however, did not include a time limit. In the 1982 agreement, West Side "transfer[red] and cede[d] to ACEMLA the exclusive rights to license in the territory or territories of United States, Puerto Rico and Dominican Republic

---

[7]There is some evidence that the term was extended for a few months, which does not affect this decision.

all the rights to public performance which have been assigned to West Side and other [sic] which may be assigned in the future . . . ."

Although the district court concluded that Varona verbally terminated the 1982 agreement, his testimony suggests that he did not remember or clearly understand the distinctions between the 1981 and 1982 agreements and that he was not sure when or how he terminated the 1982 agreement. Further, even if he did intend to terminate the 1982 agreement, that action would be effective only if the exclusive license, granted in the 1982 agreement, could be terminated verbally and unilaterally. The district court's order does not cite authority to support either theory.[8] Therefore, the record as it pertains to "Caballo Viejo" demonstrates that material facts remain in dispute so that ASCAP was not entitled to summary judgment as to that song.

2. "Patacón Pisa'o"

Ramon A. Chaverra wrote "Patacón Pisa'o" in 1984. He conveyed his copyrights to a Colombian music publisher, Prodemus, in February of 1984. Prodemus then conveyed to Música Unica Publishers the right to represent Prodemus in the United States and Puerto Rico, which gave Música Unica the rights to authorize and license "Patacón Pisa'o." Música Unica obtained a copyright registration certificate for "Patacón Pisa'o" on September 17,

---

[8]We take no position as to either of these disputed issues.

1985. Música Unica, operating under the name Unimúsica, is an ASCAP member and has a licensing agreement with ASCAP.

LAMCO/ACEMLA's claim to rights for "Patacón Pisa'o" was based on a separate line of agreements. On September 23, 1985, Chaverra, the composer, entered an agreement with Edinmúsica, LDT, transferring all title and licensing authority for "Patacón Pisa'o" as interpreted by another performer. On June 2, 1986, Edinmúsica and LAMCO/ACEMLA obtained a copyright registration for the words and music for "Patacón Pisa'o." In 1994, Chaverra terminated his agreement with Edinmúsica and entered an agreement with LAMCO/ACEMLA, transferring the exclusive rights to publish "Patacón Pisa'o" and non-exclusive rights to collect performance royalties. Chaverra also signed an affidavit, stating that LAMCO/ACEMLA represented his interests. On November 21, 1994, LAMCO/ACEMLA recorded Chaverra's affidavit and their agreement in the Copyright Office.

The district court concluded that because Música Unica never recorded its agreement with Chaverra, LAMCO/ACEMLA was the first to record. The district court held, however, that Música Unica's copyright registration certificate for "Patacón Pisa'o" provided constructive notice of Música Unica's claim to the song. For that reason, LAMCO/ACEMLA could not satisfy the good faith and without notice requirements of 17 U.S.C. § 205(d). LAMCO/ACEMLA dispute that result, arguing that the registration, in Música

-14-

Unica's name, did not provide constructive notice that ASCAP had the right to license the song.

The recording statute, 17 U.S.C. § 205, provides the process for "the Copyright Office to accept for recordation any document pertaining to a copyright." 2 Nimmer on Copyright, supra, § 7.25, 7-233. Section 205 "is relevant primarily to providing notification of transfers of copyright ownership; hence, it is interwoven with the inquiry over what constitutes constructive notice of ownership and accordingly, when a subsequent transferee may prevail over a prior transferee." Id. Section 205(d) provides:

> [a]s between two conflicting transfers, the one executed first prevails if it is recorded in the manner required to give constructive notice under [17 U.S.C. § 205(c)], within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer.

A copyright registration certificate in the Copyright Office provides "constructive notice as to the ownership of the copyright and the facts stated in the registration certificate." Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 67 (1st Cir. 1997); see also Johnson v. Jones, 149 F.3d 494, 505 (6th Cir. 1998) ("Constructive notice of a valid copyright is

-15-

presumed upon registration."). Under federal copyright law, remedies for infringement are tied to copyright registration, which provides incentive to owners to register copyrights and "also provides potential infringers with an incentive to check the federal register." Id.; cf. Gaiman v. McFarlane, 360 F.3d 644, 655 (7th Cir. 2004) (holding that co-authors do not have incentive to check the federal copyright register as to ownership claimed by their collaborators).

To meet the § 205(d) requirements and prevail on summary judgment as the first to record, LAMCO/ACEMLA had to provide undisputed facts that they recorded the transfer from Chaverra in good faith and without notice of the earlier transfer to Música Unica. It is undisputed, however, that Música Unica obtained a certificate of copyright registration for "Patacón Pisa'o" in September of 1985, days before Chaverra entered an agreement with Edinmúsica transferring rights to the song, and almost two years before Edinmúsica and LAMCO/ACEMLA obtained a copyright registration for the song. At the time LAMCO/ACEMLA entered into their transfer agreement with Chaverra, a review of the Copyright Office register would have revealed that Música Unica was listed as the copyright owner. Música Unica's registration certification for "Patacón Pisa'o," therefore, provided notice that prior transactions existed relating to the copyright for "Patacón

Pisa'o," regardless of what entity currently might claim those rights.

LAMCO/ACEMLA argue for a different rule that would base constructive notice for purposes of § 205(d) on recording the transfer to the current copyright owner, focusing on identification of the current owner as opposed to notice of prior transfers. Because such an interpretation would appear to alter the existing legal standard, we are not persuaded to adopt LAMCO/ACEMLA's argument. See, e.g., Pasdon v. City of Peabody, 417 F.3d 225, 228 (1st Cir. 2005) (declining invitation to expand standard in the absence of supporting legal authority); Plumley v. S. Container, Inc., 303 F.3d 364, 371 (1st Cir. 2002) (same). The district court was correct in concluding, based on the record presented and § 205(d), that LAMCO/ACEMLA had notice of Música Unica's copyright claim to "Patacón Pisa'o," so that § 205(d) did not apply to give LAMCO/ACEMLA priority and ASCAP's claim prevailed over LAMCO/ACEMLA's claim.

### 3. "Ojos Chinos"

Regarding "Ojos Chinos," the district court concluded that LAMCO/ACEMLA had received and recorded their license before Southern Music Publishing Company, Inc. ("Southern") (an ASCAP member) recorded, giving LAMCO/ACEMLA priority. The court held, however, that because LAMCO/ACEMLA held only a non-exclusive license, they lacked standing to bring a copyright infringement

-17-

claim. The district court also stated that the transfer agreement LAMCO/ACEMLA recorded did not meet the specificity requirements of 17 U.S.C. § 205(c) and would not serve as constructive notice of LAMCO/ACEMLA's rights to the song.

In their appellate brief, LAMCO/ACEMLA challenge only the court's ruling on the specificity requirements of § 205(c). In response, ASCAP notes that no dispute exists that a non-exclusive license does not provide standing to sue for infringement and does not address the district court's statements about the specificity requirements of § 205(c). LAMCO/ACEMLA filed a reply brief in which they assert, for the first time, that the district court failed to realize that the composer's heirs granted them an exclusive license to "Ojos Chinos." We do not consider issues raised for the first time in a reply brief, and therefore, do not address LAMCO/ACEMLA's late claim that they were granted an exclusive license. Guillemard-Ginorio v. Contreas-Gomez, ___F. 3d ___, 2007 WL 1675837 at *8 n.3 (1st Cir. June 12, 2007) (citing Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 299 (1st Cir. 2000)).

The district court's ruling that as non-exclusive licensees LAMCO/ACEMLA lacked standing to bring an infringement claim is not disputed and is correct. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to

institute an action for any infringement of that particular right committed while he or she is the owner of it." (emphasis added)). See also, e.g., T-Peg, 459 F.3d at 108 ("One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement."); Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 91 (2d Cir. 1998) ("Under United States law, an owner . . . may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b), which accords standing only to the legal or beneficial owner of an 'exclusive right.'"); I.A.E., Inc. v. Shaver, 74 F.3d 768, 775 (7th Cir. 1996) ("[A] person holding a nonexclusive license has no standing to sue for copyright infringement, . . . ."). The district court's additional statements about the specificity requirements of § 205(c) are not material to the decision that LAMCO/ACEMLA lacked standing to sue for infringement. Therefore, we will not delve into whether LAMCO/ACEMLA's recording satisfied § 205(c).

### 4. "Una Tercera Persona" and "Te Sigo Queriendo"

Luz C. Tirado wrote "Una Tercera Persona" and "Te Sigo Queriendo" in 1968 and transferred her rights in the songs to Southern, an ASCAP member, on November 20 and December 17, 1968, respectively. The transfer agreements also granted Southern the right to renew the copyrights and a power of attorney to act on Tirado's behalf in obtaining the copyright renewals. Southern

registered the copyright to "Una Tercera Persona" on February 6, 1969, and registered the copyright to "Te Sigo Queriendo" on July 29, 1969.  Southern did not record the registrations.  Under the terms of the transfer agreements with Tirado, Southern, acting on behalf of Tirado, executed assignments of the renewal rights to "Una Tercera Persona" and "Te Sigo Queriendo" and obtained copyright renewal registration certificates for "Una Tercera Persona" on June 11, 1996, and for "Te Sigo Queriendo" on June 13, 1997.

On December 2, 1980 Tirado transferred the copyrights to 153 songs, including "Una Tercera Persona," to LAMCO/ACEMLA, and they recorded the transfer agreement with the Copyright Office on February 8, 1985.  Tirado then granted LAMCO/ACEMLA the non-exclusive right to collect royalties on Tirado's behalf from the public performances of the 153 songs transferred by the December 2, 1980 agreement, and the royalties agreement was recorded on February 23, 1990.  On September 25, 1986, Tirado transferred her rights in "Te Sigo Queriendo" to LAMCO/ACEMLA, and they obtained copyright registration on February 23, 1990.

On appeal, LAMCO/ACEMLA contend that the district court erred in crediting the 1996 and 1997 transfers of renewal rights to Southern because the assignments were not actually signed by Tirado.  They rely on 17 U.S.C. § 205(a), which provides the requirements for recording copyright documents.  LAMCO/ACEMLA fail

-20-

to explain, however, why the recording statute, § 205(a), is pertinent to the validity of the 1996 and 1997 transfers. In contrast, 17 U.S.C. § 204(a), pertaining to execution of transfers of copyright ownership, provides that "[a] transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed <u>or such owner's duly authorized agent</u>." (Emphasis added.) As LAMCO/ACEMLA have failed to show that Southern was not Tirado's "duly authorized agent," the district court correctly credited the 1996 and 1997 transfers to Southern.

LAMCO/ACEMLA also challenge the district court's conclusion that Southern's 1969 certificates of registration for "Una Tercera Persona" and "Te Sigo Queriendo" provided notice of conflicting ownership interests in those songs. At the time LAMCO/ACEMLA entered into agreements to obtain the copyrights to "Una Tercera Persona" and "Te Sigo Queriendo," a review of the Copyright Office register would have revealed the registration certificates for those songs, giving LAMCO/ACEMLA notice that Southern claimed the copyrights. <u>See</u> <u>Saenger</u>, 119 F.3d at 66. Because LAMCO/ACEMLA failed to produce evidence that the copyright certificates are invalid, the district court correctly concluded, for purposes of summary judgment, that LAMCO/ACEMLA had notice of

-21-

Southern's copyright claims and, for that reason, could not meet the good faith and lack of notice requirements of § 205(d).

B. Payment Allocation

The Publishers and LAMCO/ACEMLA filed summary judgment motions on claims of ownership and infringement of copyrights for 468 songs. Instead of deciding the motions, the court laid the groundwork for a special master to use in addressing the complex issues of ownership and infringement. On March 31, 2003, the district court appointed Morton David Goldberg, Esquire, to serve as a special master in the case.[9] The court apportioned payment of the special master's fees between the Publishers and LAMCO/ACEMLA in equal portions and directed the special master to bill the parties monthly. The parties were each ordered to file a bond in the amount of $37,500. On appeal, LAMCO/ACEMLA challenge the district court's decision to divide equally, between LAMCO/ACEMLA

---

[9]The special master circulated a draft report and recommendation on March 4, 2004. On March 26, 2004, the district court denied ASCAP's and LAMCO/ACEMLA's then-pending motions for summary judgment as moot, without explanation. LAMCO/ACEMLA argue that the district court erred in denying their motion. Because the issues raised in their motion had been referred to the special master, the district court properly denied the motion on procedural grounds. See, e.g., Becker v. Fed. Election Comm'n, 230 F.3d 381, 389 (1st Cir. 2000) (discussing mootness in context of redressability). The subsequent proceedings are described in the district court's order issued on September 26, 2005.

and the Publishers, the obligation to pay the special master's fees.[10]

Federal Rule of Civil Procedure 53(a), which governed in March of 2003 when the district court appointed the special master, gave the district court authority to allocate his fees "as the court may direct."  Fed. R. Civ. P. 53(a) (2003).[11]  Under Rule 53(a), "the district court enjoys broad discretion to allocate the master's fees as it thinks best under the circumstances of the case."  Aird v. Ford Motor Co., 86 F.3d 216, 221 (D.C. Cir. 1996); see also 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil § 2608 (2d ed. 1995).  Therefore, a court's decision on allocation is reviewed for abuse of discretion.  Morgan v. Kerrigan, 530 F.2d 401, 427 (1st Cir. 1976); accord Roy v. County of Lexington, S.C., 141 F.3d 533, 549 (4th Cir. 1998); Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd., 885 F.2d 1, 9 (1st Cir. 1989).  "An abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them."  Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 6 (1st Cir. 2005) (internal quotation marks omitted).

_____

[10]LAMCO/ACEMLA challenge the district court's allocation decision, not the decision to appoint a special master.

[11]The amendments that added subdivision (h), addressing compensation, were not effective until December 1, 2003.

-23-

LAMCO/ACEMLA assert that the Publishers should have been required to pay the majority of the fees because they had "enormously disproportionate wealth" and were responsible for complicating the case to include more than 500 songs. LAMCO/ACEMLA also contend that the Broadcasters should have paid some of the fees because they benefitted from the special master's work and were parties to the suit. Equal apportionment of the fees between the Publishers and LAMCO/ACEMLA, they argue, constituted an abuse of discretion.

Such arguments might be persuasive if the record supported them. Here, however, the record shows that LAMCO/ACEMLA initiated a copyright infringement case that foreseeably burgeoned into claims involving more than five hundred songs.[12] The record also shows that the district court gave LAMCO/ACEMLA repeated opportunities to demonstrate their inability to pay their share of the fees, which LAMCO/ACEMLA failed to do. With respect to the Broadcasters' benefit from the special master's work, the Publishers took their place through the indemnification provisions in the agreements between them and paid half of the fees, partially on their behalf. Therefore, in the particular circumstances of this case, LAMCO/ACEMLA have not shown that the district court

_____

[12]LAMCO/ACEMLA were not strangers to the foreseeable complexities of copyright litigation. See, e.g., ACEMLA v. Copyright Royalty Tribunal, 854 F.2d 10 (2d Cir. 1988).

-24-

abused its discretion in the equal allocation of the special master's fees.

## C. Sanctions

In August of 2005, the district court dismissed LAMCO/ACEMLA's remaining claims, counterclaims, and defenses as a sanction for failing to comply with the court's orders to post a bond for their share of the special master's fees. LAMCO/ACEMLA challenge the sanction as being too extreme for the circumstances and, therefore, an abuse of discretion.

"A dismissal entered to sanction a party for failure to comply with a court's order or for failure to prosecute the case is reviewed for abuse of discretion." Ruiz-Rosa, 485 F.3d at 153. Whether a sanction constitutes an abuse of discretion is determined by considering all of the pertinent circumstances, "including the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." Id. at 154 (internal quotation marks omitted).

The docket and record in this case show a pattern of delaying conduct by LAMCO/ACEMLA. The district court had previously imposed sanctions against LAMCO/ACEMLA because of unexcused delay in responding to a motion for summary judgment.

-25-

After a year and a half of LAMCO/ACEMLA failing to comply with the order to post a bond for their share of the special master's fees, the district court issued an ultimatum on October 13, 2004.  The court ordered LAMCO/ACEMLA to post the bond within thirty days and warned that failure to comply would result in sanctions, including possible dismissal of their claims and defenses.  After waiting for more than eight more months, during which time LAMCO/ACEMLA still did not post the ordered bond or provide adequate reasons for their failure to do so, on August 2, 2005, the district court dismissed LAMCO/ACEMLA's remaining claims, counterclaims, and affirmative defenses as a sanction for their failure to comply with the court's orders.  Under these circumstances, the district court's sanction was not an abuse of discretion.[13]

D.  Summary Judgment in Favor of the Publishers

The district court granted summary judgment in favor of the Publishers on their infringement claims against LAMCO/ACEMLA. On appeal, LAMCO/ACEMLA argue that the district court erred in holding that a certificate of copyright registration provides notice for purposes of § 205(d), that merely authorizing the use of

---

[13]LAMCO/ACEMLA assert, as part of their statement of the case, that their counterclaim against Peer and Broadcast Music, Inc. remains pending, despite the sanction imposed by the district court.  Because LAMCO/ACEMLA provide no developed argumentation to support that assertion, we do not consider it here.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

songs constitutes copyright infringement, and that infringement could occur when LAMCO/ACEMLA had the right to license a "fifty percent writer's share" of the disputed songs. The Publishers, joined in part by ASCAP, defend the district court's decision.

1. <u>Section 205(d)</u>

LAMCO/ACEMLA dispute the district court's ruling that registration of a copyright constitutes notice for purpose of § 205(d). As they did in opposition to ASCAP's claim to "Patacón Pisa'o," LAMCO/ACEMLA argue that recording, in compliance with § 205(c), should be required to provide notice under § 205(d). We previously rejected that argument, and the same result applies here. The district court's interpretation of § 205(d) was not erroneous.

2. <u>Writers' Share</u>

LAMCO/ACEMLA claim that they have not infringed the copyrights to the disputed songs because they were entitled to license a "fifty percent writer's performance share" of ACEMLA's affiliated composers. They have not cited authority, however, to support a theory that a writer retains a fifty percent performance share in a song after relinquishing the copyright. In contrast to LAMCO/ACEMLA's theory, the owner of a copyright "has the exclusive rights to do and to authorize . . .  [others] to perform the copyrighted work publicly." 17 U.S.C. § 106(4); <u>see also</u>, <u>e.g.</u>, <u>Phillips</u> v. <u>Pembroke Real Estate, Inc.</u>, 459 F.3d 128, 133 (1st Cir.

2006) (discussing the limited rights retained by an artist after relinquishing the copyright to his work); <u>Beethoven.com LLC</u> v. <u>Librarian of Congress</u>, 394 F.3d 939, 942-43 (D.C. Cir. 2005) (discussing the exclusive performance rights held by copyright owner under Digital Millennium Copyright Act).

In addition, even if LAMCO/ACEMLA could support their retained performance rights theory, to the extent it is raised as a defense to the Publishers' infringement claims, it has been dismissed as part of the sanction imposed by the district court.

3. <u>Rescission</u>

LAMCO/ACEMLA challenged the Publishers' rights to some of the disputed songs on a rescission theory. Specifically, LAMCO/ACEMLA argued that the Publishers had failed to pay royalties under their agreements with the composers, which provided a basis for rescinding the agreements with those composers. The district court ruled that LAMCO/ACEMLA lacked standing to claim that the agreements should be rescinded. On appeal, LAMCO/ACEMLA contend that the district court's decision was error.

A question of who may assert an otherwise justiciable claim is a question of prudential standing that does not implicate the court's jurisdiction. <u>Baena</u> v. <u>KPMG LLP</u>, 453 F.3d 1, 5 (1st Cir. 2006). "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Kowalski</u> v. <u>Tesmer</u>, 543

U.S. 125, 129 (2004) (internal quotation marks omitted).  A party may assert a claim on behalf of another only when "the party asserting the right has a 'close' relationship with the person who possesses the right" and when "there is a 'hindrance' to the possessor's ability to protect his own interests."  Id. at 130.

The composers, not LAMCO/ACEMLA, were parties to the agreements in question.  LAMCO/ACEMLA have not cited authority to show that they, as non-parties to the composers' agreements with the Publishers, may seek rescission.  They have not shown a close relationship with the composers or a hindrance to the composers' ability to protect their own rights.  Therefore, the district court correctly determined that LAMCO/ACEMLA lacked standing to assert that the composers' agreements with the Publishers should be rescinded.  In addition, to the extent rescission is raised as a defense to the Publishers' infringement claims, it was dismissed by the district court as part of the sanction imposed on LAMCO/ACEMA.

4. Infringement

LAMCO/ACEMLA challenge the district court's conclusion that they infringed the Publishers' copyrights in the disputed songs by including them in the ACEMLA catalog.  They contend that merely authorizing the use of the songs, in the absence of proof that the songs were actually used in an infringing manner, is not infringement.  The Publishers argue that the particular

-29-

circumstances of this case show conduct by LAMCO/ACEMLA beyond merely authorizing use of the songs.

17 U.S.C. § 106 provides the exclusive rights that are held by the owner of a copyright. "One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement." T-Peg, Inc., 459 F.2d at 108. Mere authorization of an infringing act is an insufficient basis for copyright infringement. Venegas-Hernandez, 424 F.3d at 57-58. Infringement depends upon whether an infringing act, such as copying or performing, has occurred. Id. at 58-59. Therefore, to prove infringement, a claimant must show "an infringing act after the authorization." Id. at 59.

In this case, the district court held that LAMCO/ACEMLA infringed the Publishers' copyrights by including songs assigned to the Publishers in ACEMLA's catalog. The district court also noted that LAMCO/ACEMLA had songs available to be heard through their website and had distributed a compact disc that included some of the Publishers' songs. The Publishers argue that LAMCO/ACEMLA "knowingly hijacked" their songs by including them in the ACEMLA catalog, issued licenses to broadcasters for songs that they knew were assigned to someone else, and threatened and initiated litigation against broadcasters who played works in ACEMLA's catalog.

The Publishers have not cited authority to show that including songs in a catalog, issuing licenses, and threatening litigation are infringing actions under § 106. The district court identified eight songs that were available on ACEMLA's website and two of those songs, along with an additional song, that had been distributed by LAMCO/ACEMLA in a compact disc. While those might be infringing actions, only nine of the 468 songs that were the subject of summary judgment are involved. In addition, the district court did not decide whether LAMCO/ACEMLA had committed infringing acts in addition to authorization, leaving a factual issue as to whether LAMCO/ACEMLA's actions were infringing acts. In the absence of guidance from the district court and little assistance from the parties, we cannot decide whether the record contains sufficient undisputed evidence of infringing acts to warrant summary judgment on infringement. We therefore vacate this aspect of the district court's judgment and remand for further proceedings on this issue.

## Conclusion

Summary judgment in favor of ASCAP is reversed as to the song "Caballo Viejo" and is affirmed as to the other four songs. The district court's allocation of payment of the special master's fees and the decision imposing sanctions on LAMCO/ACEMLA are affirmed. Summary judgment in favor of the Publishers on

infringement of the copyrights to 468 songs is reversed.  The case is remanded to determine the ownership of the rights to "Caballo Viejo" and whether LAMCO/ACEMLA infringed the copyrights to 468 songs held by the Publishers.  Each party shall bear its own costs on appeal.

**Reversed in part; affirmed in part; remanded.**